**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOANN HOYT, Administratrix of the Estate of CHARLES J. BLAWAS, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>Defendant. | Civil Action No: 2:21-cv-753<br><br>***ELECTRONICALLY FILED*** |

**COMPLAINT**

Plaintiff, JoAnn Hoyt, Administratrix of the Estate of Charles J. Blawas, deceased, by and through her attorneys of record, Harry S. Cohen & Associates, PC, by Harry S. Cohen, Esquire, Todd D. Bowlus, Esquire, and Benjamin E. Cohen, Esquire brings this Complaint against the above-named Defendant and in support thereof allege as follows:

**PARTIES**

1. Plaintiff, JoAnn Hoyt, is an adult individual and at all times material hereto resided in Murrysville, Westmoreland County, Pennsylvania.

2. Plaintiff's decedent, Charles J. Blawas, (hereinafter "Charles Blawas" or "Mr. Blawas"), then 56 years of age, died intestate on September 7, 2019. At all times material hereto, Charles Blawas resided in Jeannette, Westmoreland County, Pennsylvania.

3. Plaintiff is the sister of Charles Blawas, deceased.

4. On July 15, 2020, the Register of Wills of Westmoreland County, Pennsylvania issued Letters of Administration to the Plaintiff at estate file number 6520-1101.

5. The intestate heirs, and therefore the wrongful death act and survival statutory heirs and intestate heirs include:

    a. JoAnn Hoyt, sister of the decedent;

    b. Bob Blawas, brother of the decedent;

    c. Theresa Short, sister of the decedent;

    d. Marlene Busato, sister of the decedent;

    e. Virginia Jansen, sister of the decedent;

    f. Monica Sandidge, sister of the decedent;

    g. Christina Brown, niece of the decedent; and

    h. Janean Breuss, niece of the decedent.

6. Plaintiff brings this action as Administratrix of the decedent's estate and on behalf of herself and all potential claimants under the Wrongful Death and Survival Acts.

7. At no time during the course of his lifetime did Charles Blawas bring an action for personal injuries in regard to the events described in this Complaint, and no other action for his death has been commenced against this Defendant.

8. Defendant United States of America (hereinafter "United States") is the party that maintains the U.S. Department of Veterans Affairs and its divisions and subdivisions.

9. The U.S. Department of Veterans Affairs was established by Congress to administer the healthcare system for the Veterans of the United States of America, which includes health administration in the VA Healthcare System.

10. The mission statement for the US Department of Veterans Affairs is: "To fulfill President Lincoln's promise: 'To care for him who shall have borne the battle, and for his widow, and his orphan' by serving and honoring the men and women who are America's Veterans."

11. The VA Healthcare System, through its facilities, provides a broad spectrum of medical, surgical and rehabilitative care for any veteran who served in the armed forces of the United States of America.

12. The VA Pittsburgh Healthcare System is a division of the U.S. Department of Veterans Affairs, which provides healthcare to Veterans through its facilities at the H.J. Heinz Campus in O'Hara Township, Pennsylvania.

13. The VA H.J. Heinz Campus in O'Hara Township, Pennsylvania (hereinafter "VA H.J. Heinz") is home to a 262-bed community living center classified as a Geriatric Center of Excellence as well as an ambulatory care center that offers primary care, behavioral health, and outpatient services including dental, speech pathology, pharmacy, adult day care, and rehabilitation services. The campus also offers a 96-bed Veterans Recovery Center as well as transitional care and dementia and hospice care beds.

14. At all times material hereto, Defendant United States acted by and through its agents, servants, employees and/or ostensible agents, who acted within the course and scope of their employment, duty, and authority.

## NOTICE

15. On August 5, 2020, Plaintiff's Counsel served the U.S. Department of Veterans Affairs Office of General Counsel with one (1) executed Standard Form 95 form providing notice to the United States Government of these claims on behalf of the Estate of Charles Blawas by JoAnn Hoyt, Administratrix of the Estate of Charles J. Blawas.

16. On February 26, 2021, the U.S. Department of Veterans Affairs Office of General Counsel sent a letter to Plaintiff's Counsel denying the claim and notifying the claimant to file suit

against the United States in the appropriate Federal District Court within six (6) months from the date of mailing of the notice pursuant to 28 U.S.C. §2401(b).

## JURISDICTION

17. This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. §2671.

18. Since the Plaintiff submitted an administrative claim to the U.S. Department of Veterans Affairs, which denied the claim, all conditions precedent to a Federal Tort Claim have been properly met.

19. Venue is properly within this district under 28 U.S.C. §1402(b) as the acts complained of occurred in the Western District of Pennsylvania.

20. The claims herein are brought against the United States of America pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, et seq.) and 28 U.S.C. §1346(b)(1) for money damages as compensation for personal injuries that were caused by the negligent and wrongful acts and omissions of the employees of the United States Government while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the laws of the state of Pennsylvania.

## FACTS

21. On September 5, 2019, Mr. Blawas presented to the VA H.J. Heinz for a pre-operative work-up before his scheduled out-patient left eye cataract surgery.

22. Upon his visit, Mr. Blawas was found to be in new onset atrial fibrillation with rapid ventricular response, though he was asymptomatic.

23. At 8:52 a.m., a nurse created a Morse Fall Scale in the pre-operative testing area that found Mr. Blawas to be a high fall risk.

24. Mr. Blawas had a history of alcohol use, and on this day, he had a positive Breathalyzer test that showed a blood alcohol level of .091.

25. It was noted that Mr. Blawas had fallen three to four weeks prior to this hospital visit at his home injuring his left rib cage and sustaining rib fractures.

26. Mr. Blawas was taking ibuprofen as needed for discomfort.

27. Mr. Blawas' CIWA (Clinical Institute Withdrawal Assessment for Alcohol) was 0 at the time of his initial evaluation.

28. A CIWA score helps identify alcohol withdrawal symptoms such as hallucinations, tremors, anxiety, sweating, and nausea or vomiting.

29. Per the score received, a patient may receive medication, treatment, and/or care to aid in withdrawal symptoms, and the score determines how frequently the patient should be re-scored.

30. While in the emergency department at VA H.J Heinz, Mr. Blawas was seen by staff physician, Dr. Michael Dresser.

31. At around 4:01 p.m., an intravenous line was placed, and an intravenous Cardizem bolus was administered to Mr. Blawas, followed by a Cardizem drip.

32. Mr. Blawas had an elevated blood pressure of 162/119 while in the emergency room.

33. Mr. Blawas had standard labs drawn including troponin, thyroid, and magnesium levels, and a portable chest X-ray was completed along with a bedside echocardiogram.

34. Dr. Dresser noted that Mr. Blawas' heart rate improved significantly with the Cardizem, and he ordered further telemetry monitoring for further treatment of his atrial fibrillation, though a telemetry bed was not immediately available.

35. Dr. Dresser noted that he would hold on anticoagulation at that time.

36. Dr. Dresser's Clinical Impression of Mr. Blawas was "Rapid A-fib in setting of chronic alcoholism."

37. At around 4:18 p.m., hospitalist, Dr. Rebecca H. Levine, assessed Mr. Blawas and found him to be out of atrial fibrillation and in normal sinus rhythm.

38. Dr. Levine made a plan of care for Mr. Blawas that included converting the intravenous Cardizem to oral Cardizem every six hours, continuing telemetry and blood pressure checks, consulting acute care for their evaluation on anticoagulation, and continuing CIWA scoring every six hours.

39. On September 6, 2019, at 7:52 a.m., while still in the hospital, Mr. Blawas suffered a fall that prompted a Condition C to be called.

40. Mr. Blawas was found post-fall with blood coming from his head, and he was noted to be actively seizing.

41. Mr. Blawas was immediately taken for an emergent CT scan of his head and C-spine, which found him to have "acute subarachnoid hemorrhage in the right frontal and left frontal temporal parietal lobes with blood layering along the fall and a small left frontal parietal subdural."

42. A repeat CT scan of Mr. Blawas' head was completed that showed "marked worsening of subarachnoid and subdural hematomas in the right frontal and left frontal temporal parietal regions with mass effect and midline shift of approximately 7 mm left to right" and "Increasing hemorrhage in the left scalp with probable left temporal parietal bone fracture."

43. Neurosurgery was consulted and indicated that surgery was possible but would most likely result in a poor outcome.

44. Therefore, Mr. Blawas' family made the decision to not move forward with any operation and transition Mr. Blawas to CMO (Comfort Measures Only) status based on his wishes and his previously documented living will.

45. On September 7, 2019 at 7:19 p.m., Mr. Blawas was pronounced dead.

46. On September 10, 2019, an autopsy consult was performed by Dr. Anupama Sharma.

47. Dr. Sharma included the following in the Provisional Anatomic Diagnosis: Clinical history of a recent fall with radiological evidence of subdural, subarachnoid and intraparenchymal hemorrhage; pending neuropathology review: a) Left frontal temporal parietal lobe blood clot; b) Left scalp laceration (3cm) and left lateral skull fracture; c) Blood extension throughout the spinal cord; d) Clinical history of alcohol dependence and possible alcohol withdrawal with seizures; e) Clinical history of elevated LFTs and low platelet; f) Raised PT (15.2, PTT (33.7) and INR (1.2).

48. Dr. Sharma's Provisional Anatomic Diagnosis also included Bilaterally congested and heavy lungs, rare patchy atherosclerotic plaques and fatty streaks on the abdominal aorta, mildly sclerotic liver, focal hemorrhagic and congested area in the second part of the duodenum, and bilaterally granular, mildly scarred and mottled kidneys.

49. As a direct and proximate result of the negligence of the Defendant, as set forth above and herein, Plaintiff's Decedent suffered the following injuries and damages:

   (a) Death;

   (b) Subdural, subarachnoid and intraparenchymal hemorrhage;

   (c) Skull Fracture;

   (d) Subarachnoid and subdural hematomas in the right frontal and left frontal temporal parietal regions;

   (e) Loss of enjoyment of life's pleasures;

    (f)    Physical pain and suffering;

    (g)    Mental anguish and emotional distress;

    (h)    Embarrassment and humiliation;

    (i)    Lost wages;

    (j)    Loss of social security and income;

    (k)    Loss of a chance to receive appropriate surgical/medical interventions;

    (l)    Loss of a chance of recovery; and

    (m)    Funeral, burial and related expenses.

## COUNT I – Professional Negligence

*JoAnn Hoyt, Administratrix of the Estate of Charles J. Blawas, Deceased vs. United States of America*

### SURVIVAL ACTION

50.    The foregoing paragraphs are incorporated herein by reference as though fully set forth below at length.

51.    Plaintiff brings this Survival Action under 20 Pa. C.S.A. § 3373 and 42 Pa. C.S.A. § 8302.

52.    Defendant United States of America, by and through its agents, ostensible agents, employees and/or servants, was negligent in the following particulars:

    (a)    In failing to properly recognize, appreciate and/or manage Decedent's history of recent onset atrial fibrillation, extensive history of alcohol use, and/or presentation with a blood alcohol level of .091 at the time of admission;

    (b)    In failing to properly document Decedent's history of falls in the nursing notes;

(c) In failing to document a care plan upon Decedent's admission that outlined the steps to take in order to prevent Decedent from falling;

(d) In creating a Morse Fall Scale and/or classifying Decedent as a high fall risk in the pre-operative testing area, but failing to do so following Decedent's admission;

(e) In failing to document and/or provide records showing any assessment and/or interventions implemented to prevent Decedent from falling once Decedent was admitted to the floor;

(f) In failing to implement the proper fall risk interventions;

(g) In failing to recognize, appreciate, and/or act upon Decedent's multiple conditions that could have led to dizziness, making him a clear fall risk;

(h) In failing to timely and properly provide and/or document Decedent's telemetry monitoring;

(i) In failing to timely and properly provide and/or document Decedent's CIWA scores, which were to be checked every six hours;

(j) In failing to timely and properly monitor Decedent per CIWA protocol;

(k) In failing to appropriately monitor Decedent considering his known history of falls prior to admission;

(l) In failing to properly score Decedent as a fall risk upon admission;

(m) In failing to recognize, appreciate and/or act upon Decedent's left eye cataract that may have caused blurred vision;

(n) In failing to timely and properly document and/or provide a record that shows standard rounding and/or monitoring of Decedent;

(o) In failing to document an hourly safety record;

(p) In failing to ensure that Decedent's side rails were up, his personal items and call light were within reach, and/or that he was aware of toileting instructions;

(q) In failing to timely and properly document and/or take Decedent's vital signs;

(r) In failing to properly examine and monitor Decedent in an adequately frequent and timely manner;

  (s)  In leaving Decedent unattended and without the proper interventions considering his high fall risk;

  (t)  In permitting, causing and/or allowing Decedent to suffer a preventable fall;

  (u)  In failing to ensure the safety of patients admitted to the hospital; and

  (v)  In failing to delegate responsibilities of the examination, observation and/or monitoring of Decedent to individuals more qualified to appreciate the history, conditions, signs, symptoms, complaints, and/or test results of Decedent.

53. The negligence of Defendant United States and/or its agents, ostensible agents, servants and/or employees as described herein was the "legal cause" of Plaintiff's Decedent's injuries and damages as described herein.

54. The negligence of Defendant United States and/or its agents, ostensible agents, servants and/or employees as described herein increased the risk that Plaintiff's Decedent would suffer the injuries and damages as described herein.

55. As a direct and proximate result of the negligence of Defendant United States and/or its agents, ostensible agents, servants and/or employees as described herein, Plaintiff's Decedent suffered and Defendant United States is liable for the within described injuries and damages.

56. Defendant United States is vicariously liable for the negligent acts and omissions of its agents, ostensible agents, servants and/or employees.

57. As a direct and proximate result of the negligence of Defendant United States and/or its agents, ostensible agents, servants and/or employees, as described herein, Plaintiff's Decedent suffered and Defendant United States is liable for the within described injuries and damages, and the following:

  (a)  Decedent's pain, suffering and/or inconvenience;

    (b)    Decedent's loss of enjoyment of life;

    (c)    Decedent's lost wages;

    (d)    Decedent's total estimated future earning power less his estimated cost of personal maintenance;

    (e)    Decedent's need to undergo substantial medical treatment and hospitalization and for medical and other health care bills;

    (f)    Decedent's loss of retirement and Social Security income;

    (g)    Decedent's funeral/burial expenses, expenses incident to the Estate and/or other financial losses suffered as a result of his death; and

    (h)    Any other damages allowed under the Survival Act.

WHEREFORE, Plaintiff demands judgment in her favor and against the Defendant in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**

## COUNT II – Professional Negligence

*JoAnn Hoyt, Administratrix of the Estate of Charles J. Blawas, Deceased vs. United States of America*

### WRONGFUL DEATH ACTION

58.    The foregoing paragraphs are incorporated herein by reference as though fully set forth below at length.

59.    Plaintiff brings this Wrongful Death Action pursuant to the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. § 8301 and Pa. R.C.P. § 2202(a).

60.    As a direct and proximate result of the negligence of Defendant United States and/or the Defendant's agents, ostensible agents, servants and/or employees, as described herein, the Wrongful Death Beneficiaries suffered and Defendant United States is liable for the within described injuries and damages, and the following:

    (a)    Funeral expenses for the Decedent;

    (b)    Expenses for Administration related to Decedent's injuries;

    (c)    Medical and hospital expenses;

    (d)    Loss of support; and

    (e)    Such other damages as are permissible in a Wrongful Death Action.

61. Defendant United States is vicariously liable for the negligent acts and omissions of its agents, ostensible agents, servants and/or employees.

WHEREFORE, Plaintiff demands judgment in her favor and against the Defendant in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**

## COUNT III – Direct Negligence

*JoAnn Hoyt, Administratrix of the Estate of Charles J. Blawas, Deceased vs. United States of America*

### SURVIVAL ACTION

62. The foregoing paragraphs are incorporated herein by reference as though fully set forth below at length.

63. Plaintiff brings this Survival Action under 20 Pa. C.S.A. § 3373 and 42 Pa. C.S.A. § 8302.

64. Defendant United States, by and through its agents, ostensible agents, employees and/or servants, was negligent in the following particulars:

    (a)    In failing to adequately supervise, evaluate, monitor and/or oversee the staff, residents, fellows, students, physicians, consults, nurses, nurse practitioners, physicians' assistants, technicians, and/or all other health care providers rendering care to Decedent;

    (b)    In failing and/or neglecting to hire, select, retain, grant privileges to, employ and/or consult physicians and/or other health care personnel with adequate

experience, qualifications, education and/or special skill to properly examine, diagnose, treat and/or render care to Decedent;

(c) In failing to ensure that the physicians, medical staff, nursing staff, and/or other health care providers were properly trained to recognize, appreciate and/or manage Decedent's history of recent onset atrial fibrillation, left eye cataract, extensive history of alcohol use, and/or presentation with a blood alcohol level of .091 at the time of admission;

(d) In failing to ensure that the physicians, medical staff, nursing staff, and/or other health care providers were properly trained to document Decedent's history of falls and/or score Decedent's fall risk;

(e) In failing to ensure that the physicians, medical staff, nursing staff, and/or other health care providers were properly trained to provide adequate documentation and/or record of Decedent's relevant history and/or subsequent care plan;

(f) In failing to ensure that the health care providers were properly trained and adequately staffed to document any assessment and/or fall interventions implemented and/or implement the proper fall risk interventions;

(g) In failing to ensure that the health care providers were properly trained to recognize, appreciate, and/or act upon multiple conditions that contributed to making Decedent a clear fall risk;

(h) In failing to ensure that the health care providers were properly trained to provide and/or document Decedent's telemetry monitoring;

(i) In failing to ensure that the health care providers were properly trained and adequately staffed to timely and properly provide and/or document Decedent's CIWA scores and/or monitor Decedent per CIWA protocol;

(j) In failing to have adequate health care providers to examine and/or monitor patients for potential emergencies;

(k) In failing to ensure that the health care providers were properly trained to place Decedent's side rails up, put his personal items and call light within reach, and/or make sure he was aware of toileting instructions;

(l) In failing to ensure that the health care providers were properly trained to document and/or take Decedent's vital signs;

(m) In failing to have competent physicians, nurses, residents, and/or other health care providers on staff;

(n) In failing to have proper policies, protocols and or procedures in place to ensure Decedent's history of recent onset atrial fibrillation, left eye cataract, extensive history of alcohol use, and/or presentation with a blood alcohol level of .091 was recognized, appreciated and/or managed at the time of admission;

(o) In failing to have proper policies, protocols and or procedures in place to properly document Decedent's history of falls and/or score Decedent's fall risk;

(p) In failing to have proper policies, protocols and or procedures in place to provide adequate documentation and/or record of Decedent's relevant history and/or subsequent care plan

(q) In failing to have proper policies, protocols and or procedures in place to document any assessment and/or fall interventions implemented and/or implement the proper fall risk interventions;

(r) In failing to have proper policies, protocols and or procedures in place to recognize, appreciate, and/or act upon multiple conditions that contributed to making Decedent a clear fall risk

(s) In failing to have proper policies, protocols and or procedures in place to provide and/or document telemetry monitoring;

(t) In failing to have proper policies, protocols and or procedures in place to timely and properly provide and/or document Decedent's CIWA scores and/or monitor Decedent per CIWA protocol;

(u) In failing to have proper policies, protocols and or procedures in place to examine and/or monitor patients for potential emergencies;

(v) In failing to have proper policies, protocols and or procedures in place to ensure Decedent's side rails were up, his personal items and call light were within reach, and/or he was aware of toileting instructions;

(w) In failing to have appropriate policies in effect to ensure prompt and effective communication between health care providers;

(x) In failing to have proper policies, protocols and or procedures in place to document and/or take Decedent's vital signs; and

(y) In failing to have proper policies, protocols and or procedures in place to prevent Decedent from suffering a preventable fall.

65. The negligence of Defendant United States and/or its agents, ostensible agents, servants and/or employees as described herein was the "legal cause" of Plaintiff's Decedent's injuries and damages as described herein.

66. The negligence of Defendant United States and/or its agents, ostensible agents, servants and/or employees as described herein increased the risk that Plaintiff's Decedent would suffer the injuries and damages as described herein.

67. As a direct and proximate result of the negligence of Defendant United States and/or its agents, ostensible agents, servants and/or employees as described herein, Plaintiff's Decedent suffered and Defendant United States is liable for the within described injuries and damages.

68. Defendant United States is vicariously liable for the negligent acts and omissions of its agents, ostensible agents, servants and/or employees.

69. As a direct and proximate result of the negligence of Defendant United States and/or its agents, ostensible agents, servants and/or employees, as described herein, Plaintiff's Decedent suffered and Defendant United States is liable for the within described injuries and damages, and the following:

      (a)    Decedent's pain, suffering and/or inconvenience;

      (b)    Decedent's loss of enjoyment of life;

      (c)    Decedent's lost wages;

      (d)    Decedent's total estimated future earning power less his estimated cost of personal maintenance;

      (e)    Decedent's need to undergo substantial medical treatment and hospitalization and for medical and other health care bills;

      (f)    Decedent's loss of retirement and Social Security income;

  (g)  Decedent's funeral/burial expenses, expenses incident to the Estate and/or other financial losses suffered as a result of his death; and

  (h)  Any other damages allowed under the Survival Act.

WHEREFORE, Plaintiff demands judgment in her favor and against the Defendant in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**

### COUNT IV – Direct Negligence

*JoAnn Hoyt, Administratrix of the Estate of Charles J. Blawas, Deceased vs. United States of America*

**WRONGFUL DEATH ACTION**

70. The foregoing paragraphs are incorporated herein by reference as though fully set forth below at length.

71. Plaintiff brings this Wrongful Death Action pursuant to the Pennsylvania Wrongful Death Act 42 Pa.C.S.A. § 8301 and Pa. R.C.P. § 2202(a).

72. As a direct and proximate result of the negligence of Defendant United States and/or the Defendant's agents, ostensible agents, servants and/or employees, as described herein, the Wrongful Death Beneficiaries suffered and Defendant United States is liable for the within described injuries and damages, and the following:

  (a) Funeral expenses for the Decedent;

  (b) Expenses for Administration related to Decedent's injuries;

  (c) Medical and hospital expenses;

  (d) Loss of support; and

  (e) Such other damages as are permissible in a Wrongful Death Action.

73. Defendant United States is vicariously liable for the negligent acts and omissions of its agents, ostensible agents, servants and/or employees.

WHEREFORE, Plaintiff demands judgment in her favor and against the Defendant in an amount in excess of the jurisdictional limits of compulsory arbitration, excluding costs and interest.

**JURY TRIAL DEMANDED**

Respectfully submitted,

DATE:  June 7,  2021              **HARRY S. COHEN & ASSOCIATES, P.C.**

By: *Harry S. Cohen, Esquire*
Harry S. Cohen, Esquire
Attorneys for Plaintiff
Harry S. Cohen & Associates, P.C.
Two Chatham Center, Suite 985
Pittsburgh, PA  15219
(412) 281-3000
Email: hcohen@medmal1.com
Pennsylvania Bar No. 30682